**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

FILED BY _____ D.C.

MAR 27 2026

ANGELA E. NOBLE
CLERK U S DIST. CT.
S.D. OF FLA   W.P.B.

**MELANIE M. BERES,**
Plaintiff,

v.

**Municipal / Governmental Entities:**

- CITY OF WEST PALM BEACH
- PALM BEACH COUNTY
- PALM BEACH COUNTY SHERIFF'S OFFICE

**Private Government Contractor:**

- WELLPATH HOLDINGS, INC.

**State Attorneys (Individual Capacity – Administrative Acts Only):**

- WENDY BORREGO, Assistant State Attorney
- WEIR LEE KING, JR., Assistant State Attorney
- LIZ HERNANDEZ, Former Assistant State Attorney

**Judicial Officers (Official Capacity Only – Declaratory & Prospective Relief):**

- JUDGE DINA KEEVER-AGRAMA
- JUDGE ROSEMARIE SCHER
- JUDGE LAUREN BURKE

**Unidentified Defendants:**

- JOHN AND JANE DOES 1–30

**CIVIL ACTION NO.:** _____

**WAIVER OF JURY TRIAL**

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

(42 U.S.C. § 1983, ADA Title II, Rehabilitation Act § 504)

## I. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, including its Due Process and Equal Protection Clauses and the rights incorporated therein, as well as Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

2. This Court has subject-matter jurisdiction pursuant to **28 U.S.C. § 1331** because this action arises under the Constitution and laws of the United States, including **42 U.S.C. § 1983**, the **Fourteenth Amendment to the United States Constitution, Title II of the Americans with Disabilities Act**, and **Section 504 of the Rehabilitation Act**. This Court also has jurisdiction pursuant to **28 U.S.C. § 1343(a)(3) and (a)(4)** because this action seeks to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and to secure equitable and other relief authorized by federal civil-rights statutes.

3. Venue is proper in this District under **28 U.S.C. § 1391(b)** because all events giving rise to this action occurred in **Palm Beach County, Florida**.

## II. PARTIES

**Plaintiff**

4. **Plaintiff Melanie M. Beres** is a private individual domiciled in Wisconsin who, in 2024 in the State of Florida, was arrested, incarcerated at the Palm Beach County Jail, placed on punitive suicide watch, and involuntarily detained pursuant to the Florida Mental Health Act ("Baker Act"), under judicial orders that were subsequently vacated and declared void *ab initio*.

**Defendants**

5. **Defendant City of West Palm Beach** is a municipal corporation organized under the laws of the State of Florida and is responsible for the **policies, customs, practices, training, supervision, and discipline** of the West Palm Beach Police Department and its officers. At all times relevant, the City acted through its policymakers and agents under color of state law.

   The City **maintained, tolerated, ratified, and enforced policies and practices** that resulted in unlawful arrests, unconstitutional seizures, retaliatory enforcement of void judicial orders, and discriminatory treatment of individuals with disabilities. These policies and practices included, but were not limited to, **failure to train officers on constitutional limits, probable cause requirements, disability accommodations, and the enforcement of facially invalid injunctions and orders**.

   The City derives **financial and institutional benefit** from these unconstitutional practices, including through **fine and fee revenue, grant-based funding and program allocations tied to enforcement activity, arrest and detention-related cost shifting,** and the **avoidance of accountability costs** that would result from constitutionally adequate training, supervision, discipline, and compliance.

   In addition, the City benefits from **budgetary incentives, federal and state funding eligibility, tax-related advantages, and fiscal mechanisms** that reward enforcement volume, arrest metrics, and institutional compliance statistics rather than constitutional outcomes. These incentives create pressure to prioritize enforcement and detention over civil rights and disability accommodations.

   Upon information and belief, these financial incentives—including **funding streams, insurance arrangements, indemnification structures, and other fiscal mechanisms subject to discovery**—encouraged deliberate indifference to constitutional violations and contributed to a longstanding, widespread custom of unconstitutional conduct. Such policies, practices, and customs were known to or ratified by City policymakers, rendering the City liable under **Monell v. Department of Social Services**, 436 U.S. 658 (1978).

   As a direct and proximate result of the City's policies, customs, and deliberate indifference, Plaintiff suffered violations of her rights under the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act, and sustained substantial damages.

6. **Defendant Palm Beach County** is a political subdivision of the State of Florida and is responsible for the **operation, funding, and oversight of the Palm Beach County Jail,**

including **detainee safety, conditions of confinement, medical and mental-health contracting, and policy-making authority** governing detention practices. At all times relevant, the County acted under color of state law through its officials, policymakers, contractors, and agents.

Palm Beach County **established, maintained, tolerated, and ratified policies, customs, and practices** that resulted in unconstitutional conditions of confinement, deliberate indifference to serious medical and mental-health needs, misuse of suicide-watch protocols, failure to accommodate disabilities, and exposure of detainees to unsafe and degrading conditions. These policies and practices included, but were not limited to, **inadequate training and supervision**, deficient oversight of medical contractors, and failure to correct known systemic risks within the jail.

The County **derives financial and institutional benefit** from these practices through **detention-related funding mechanisms, cost-shifting arrangements, contract structures with private medical providers, insurance and indemnification frameworks, and the avoidance of costs associated with constitutionally adequate staffing, training, medical care, and oversight.** Upon information and belief, **budgetary incentives, grant eligibility, and other fiscal mechanisms subject to discovery** encouraged deliberate indifference to detainee health, safety, and constitutional rights.

These policies, customs, and financial incentives were **longstanding, widespread, and known to County policymakers**, who failed to take corrective action despite obvious risks and repeated violations. As a direct and proximate result, Plaintiff suffered substantial constitutional and statutory injuries, rendering Palm Beach County liable under **Monell v. Department of Social Services**, 436 U.S. 658 (1978). Upon information and belief, similar constitutional violations involving unlawful injunction enforcement, misuse of suicide-watch protocols, and failure to accommodate detainees with disabilities have occurred repeatedly within Palm Beach County detention facilities and court enforcement systems. These incidents demonstrate a pattern of unconstitutional conduct sufficient to place municipal policymakers on notice of systemic deficiencies.

7. **Defendant Palm Beach County Sheriff's Office** is the law-enforcement agency responsible for the **operation of the Palm Beach County Jail**, commonly known as the **"Gun Club,"** and for the **custody, supervision, control, and care of all detainees** housed therein. At all times relevant, the Sheriff's Office acted under color of state law through its sworn deputies, correctional officers, supervisors, command staff, and agents.

The Sheriff's Office **established, implemented, enforced, tolerated, and ratified policies, customs, and practices** governing arrest intake, housing assignments, use of force, suicide-watch placement, medical and mental-health referrals, disability

accommodations, and conditions of confinement. These policies and practices resulted in **unconstitutional conditions**, including deliberate indifference to serious medical and mental-health needs, misuse of suicide-watch protocols, exposure to unsafe and degrading environments, and failure to protect detainees from known risks.

The Sheriff's Office **failed to adequately train, supervise, discipline, and monitor** its personnel despite obvious and recurring constitutional violations. Supervisory personnel and policymakers were **aware of, or deliberately indifferent to**, these violations and failed to take corrective action, thereby permitting a **longstanding and widespread custom** of unconstitutional conduct to persist.

The Sheriff's Office **derives financial and institutional benefit** from these practices through **detention-related funding mechanisms, staffing and overtime structures, budgetary incentives, insurance and indemnification arrangements, and the avoidance of costs associated with constitutionally adequate staffing, training, medical care, and oversight**. Upon information and belief, **additional fiscal mechanisms subject to discovery** further incentivized enforcement and detention practices over compliance with constitutional and statutory requirements.

As a direct and proximate result of these policies, customs, financial incentives, and failures to train and supervise, Plaintiff suffered violations of her rights under the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act, rendering the Sheriff's Office liable under **Monell v. Department of Social Services**, 436 U.S. 658 (1978).

8. **Defendant Wellpath Holdings, Inc.** is a private corporate entity that, at all times relevant, **owned, controlled, or operated subsidiaries and affiliated entities contracted to provide medical and mental-health services at the Palm Beach County Jail**. Through those entities and contractual arrangements, Wellpath performed functions that are traditionally and exclusively the responsibility of the State, including the provision of constitutionally required medical and mental-health care to detainees, and therefore acted **under color of state law**.

In its capacity as the corporate parent and policymaking entity for jail medical services, Wellpath **established, approved, implemented, and enforced corporate policies, protocols, staffing models, and cost-containment practices** that governed medical and mental-health care provided to detainees at the Palm Beach County Jail. These policies and practices resulted in **deliberate indifference to serious medical and mental-health needs**, including inadequate clinical assessment, misuse of suicide-watch protocols, failure to provide appropriate treatment, and failure to accommodate disabilities.

Wellpath **derived financial benefit** from these practices through **corporate-level budgeting, staffing ratios, utilization controls, and cost-containment directives** applicable to its jail-healthcare operations. Upon information and belief, **corporate policies and fiscal incentives**, including those related to staffing, treatment authorization, and risk management, encouraged the prioritization of cost savings over constitutionally adequate care.

Wellpath's policymakers and supervisory personnel were **aware of, or deliberately indifferent to**, the substantial risk of harm created by these policies and failed to take corrective action. As a direct and proximate result, Plaintiff suffered violations of her rights under the **Fourteenth Amendment**, the **Americans with Disabilities Act**, and the **Rehabilitation Act**, rendering Wellpath liable under **42 U.S.C. § 1983**.

9.  **Defendant Wendy Borrego**, an Assistant State Attorney for Palm Beach County, is sued in her **individual capacity** for **administrative, investigative, and non-advocacy acts** undertaken under color of state law. Defendant Borrego was the **initial prosecutor assigned to Plaintiff's case** and played a central role in the **origination and early continuation** of the criminal proceedings against Plaintiff.

    In her capacity as the first prosecuting authority, Defendant Borrego **initiated, authorized, and maintained prosecution** against Plaintiff **without probable cause**, based on **facially invalid and jurisdictionally defective judicial orders** that were later declared **void ab initio**. Prior to the filing and continuation of charges, Defendant Borrego **knew or should have known** that the statutory prerequisites for enforcement were not satisfied and that the proceedings lacked a lawful factual or legal basis.

    Defendant Borrego further engaged in **administrative and investigative conduct** separate from protected courtroom advocacy, including approving charging decisions, directing or acquiescing in enforcement actions, and failing to terminate proceedings upon discovery of exculpatory information and jurisdictional defects. Her actions were **ministerial and administrative in nature**, not discretionary trial advocacy, and therefore are **not protected by absolute prosecutorial immunity**.

    By setting the prosecution in motion and failing to correct known deficiencies at its inception, Defendant Borrego **caused and foreseeably contributed to Plaintiff's unlawful arrest, detention, and subsequent constitutional injuries**, including loss of liberty, exposure to punitive confinement conditions, and cascading harm resulting from enforcement of void judicial process. Defendant Borrego acted with **deliberate indifference** to Plaintiff's constitutional rights, rendering her liable under **42 U.S.C. § 1983**.

Prosecutorial immunity does not apply to administrative or investigative actions taken outside the role of courtroom advocacy. See **Buckley v. Fitzsimmons, 509 U.S. 259 (1993)** and **Kalina v. Fletcher, 522 U.S. 118 (1997)**. Defendants' conduct in initiating, supervising, and maintaining prosecution without probable cause constituted administrative and investigative acts not protected by absolute immunity.

10. **Defendant Weir Lee King, Jr.**, an Assistant State Attorney for Palm Beach County, is sued in his **individual capacity** for **administrative, supervisory, and non-advocacy acts** undertaken under color of state law. Defendant King **assumed responsibility for Plaintiff's case after the initial prosecutor stepped down** and played a direct role in the **continuation and maintenance of the prosecution** despite the absence of probable cause and the existence of jurisdictional defects.

Upon assuming control of the matter, Defendant King **approved, authorized, and permitted the continuation of enforcement actions** based on **facially invalid and legally deficient judicial orders** that were later declared **void ab initio**. At all relevant times, Defendant King **knew or should have known** that the statutory prerequisites for prosecution and enforcement were not satisfied and that continuation of the case would foreseeably result in constitutional injury.

In the course of his **administrative and supervisory conduct**, Defendant King made statements to third parties that **questioned Plaintiff's mental competence** and **discouraged lawful assistance being provided to her**, reflecting bias, disregard for **Plaintiff's legal capacity, and improper reliance on perceived mental status rather than lawful evidentiary standards**. These statements were made **outside the scope of formal courtroom advocacy** and informed administrative decision-making regarding the continuation of the prosecution.

At all relevant times, the prosecutorial actions and omissions described herein occurred within an institutional framework that **financially and professionally incentivized the initiation and continuation of criminal proceedings**, including through **salary and employment stability, performance evaluation metrics, budgetary considerations, grant eligibility, institutional prestige, and the avoidance of internal accountability costs** associated with dismissing unlawfully initiated cases.

Upon information and belief, these **institutional incentives**, coupled with the absence of meaningful oversight or consequence for continuing prosecutions lacking probable cause, **encouraged deliberate indifference to constitutional violations** and contributed to the maintenance of proceedings under void judicial process. These incentives were **not personal profiteering**, but rather **systemic pressures** that informed administrative and supervisory decision-making outside the scope of protected advocacy.

Defendant King **failed to intervene, correct, or terminate** the unlawful prosecution after assuming responsibility for the case, despite possessing the authority and obligation to do so. His actions and omissions were **ministerial and administrative in nature**, not protected prosecutorial advocacy, and **directly contributed to Plaintiff's unlawful arrest, detention, and ongoing constitutional harm**, including stigma, loss of liberty, and exposure to punitive confinement conditions.

By continuing the prosecution under void judicial process and by acting with **deliberate indifference** to Plaintiff's constitutional rights and documented disabilities, Defendant King is liable to Plaintiff under **42 U.S.C. § 1983**.

11. **Defendant Liz Hernandez**, a former Assistant State Attorney for Palm Beach County, is sued in her **individual capacity** for **administrative, investigative, and supervisory acts** undertaken under color of state law. Defendant Hernandez was the **third and final prosecutor assigned to Plaintiff's case**, assuming responsibility **after Defendant Weir Lee King, Jr. stepped down**, and played a direct role in the **continued maintenance of the prosecution**.

    In that role, Defendant Hernandez **participated in, authorized, and permitted the continuation of criminal proceedings** against Plaintiff **without probable cause**, and in reliance on **facially invalid and jurisdictionally defective judicial process** that was later declared **void ab initio**. At the time she assumed responsibility, Defendant Hernandez **knew or should have known** that the statutory prerequisites for prosecution and enforcement were not satisfied and that continuation of the case would foreseeably result in constitutional injury.

    Defendant Hernandez's conduct included **administrative and supervisory decision-making**, such as reviewing the procedural posture of the case, acquiescing in enforcement actions, and **failing to dismiss or correct the prosecution** despite clear jurisdictional defects and the absence of lawful factual support. These actions were **non-advocacy in nature** and therefore **not protected by absolute prosecutorial immunity**.

    By failing to intervene and terminate the proceedings after assuming control of the case, Defendant Hernandez **contributed to Plaintiff's unlawful arrest, detention, and ongoing deprivation of liberty and due process**. Her actions and omissions were undertaken with **deliberate indifference** to Plaintiff's constitutional rights and documented disabilities, rendering her liable under **42 U.S.C. § 1983**.

12. **Defendant Dina Keever-Agrama** is a Judge of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. Judge Keever-Agrama is sued **only in her official capacity** for **declaratory and prospective injunctive relief**, not damages. Plaintiff alleges that

Judge Keever-Agrama issued and enforced civil injunction orders **without satisfaction of statutory prerequisites and without constitutionally required findings**.

After conducting a courtroom proceeding in which Judge Keever-Agrama **affirmatively told Plaintiff that she was free to leave the courtroom and instructed her to obtain a copy of the order**, Plaintiff exited the courtroom in reliance on that directive. **After Plaintiff had left the courtroom and outside her presence**, Judge Keever-Agrama **entered additional and more restrictive orders**, including an order prohibiting Plaintiff from coming within **500 feet of property she lawfully owned**, located at **835 31st Street, West Palm Beach, Florida 33407**. Plaintiff received no notice or opportunity to be heard regarding these additional restrictions, which materially altered her rights and formed the basis for subsequent enforcement actions. Plaintiff seeks declaratory and prospective relief to prevent the issuance or enforcement of post-hearing orders entered outside a party's presence, in violation of due process.

**Defendant Rosemarie Scher** is a Judge of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. Judge Scher is sued **only in her official capacity** for **declaratory and prospective injunctive relief**, not damages. While Plaintiff was confined at the Palm Beach County Jail, Judge Scher **determined that there was probable cause to believe a temporary restraining order had been violated**, despite the existence of **clear jurisdictional defects and the absence of statutory prerequisites for enforcement**, and ordered Plaintiff's **involuntary Baker Act detention** and transfer to a behavioral health facility. Plaintiff alleges that this determination was made **without adequate consideration of exculpatory indicators and procedural deficiencies**, including failures to recognize defects evident on the face of the underlying civil process. Plaintiff seeks prospective relief to require constitutionally adequate probable-cause determinations and compliance with statutory safeguards before involuntary commitment orders are issued.

**Defendant Lauren Burke** is a Judge of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. Judge Burke is sued **only in her official capacity** for **declaratory and prospective injunctive relief**, not damages. Judge Burke presided over the misdemeanor proceeding alleging violation of a temporary restraining order and exercised administrative and supervisory authority over scheduling and enforcement. Prior to the issuance of a bench warrant, Plaintiff **timely notified the court of an emergency medical event**, specifically a **hospital visit for a sprained ankle**, and **requested that the hearing be rescheduled or conducted virtually**, leaving voicemail communications with the court. **No response was provided and no ruling was issued on the request**, yet a **bench warrant was nevertheless issued**, resulting in Plaintiff's **second arrest**. Plaintiff seeks prospective relief requiring courts to **consider and rule**

**upon medical-emergency and disability-related requests** before issuing coercive enforcement orders such as bench warrants.

Plaintiff does not seek monetary damages against the Judicial Defendants and expressly acknowledges the doctrine of judicial immunity as to judicial acts. Plaintiff seeks only prospective declaratory and injunctive relief pursuant to Ex parte Young, 209 U.S. 123 (1908), to prevent ongoing and future constitutional violations. Judicial immunity does not bar such prospective relief.

Judicial immunity does not extend to acts taken in the clear absence of jurisdiction or to non-judicial conduct. See **Stump v. Sparkman, 435 U.S. 349 (1978); Mireles v. Waco, 502 U.S. 9 (1991).**

Judicial immunity does not extend to conduct that is administrative, investigative, or otherwise non-judicial in nature. See *Forrester v. White*, **484 U.S. 219, 227–29 (1988)**. To the extent that any Judicial Defendant engaged in actions outside the adjudicative function—including ex parte communications, investigative conduct, or actions taken outside formal judicial proceedings—such conduct constitutes non-judicial activity and is not protected by absolute judicial immunity.

Absolute judicial immunity likewise does not apply where a judicial officer acts in the clear absence of jurisdiction. See *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Plaintiff alleges that certain orders and enforcement actions described herein were issued without satisfaction of statutory prerequisites and outside the lawful authority conferred by Florida law, thereby raising substantial questions as to whether those acts were taken in the absence of jurisdiction.

13. **Defendants John/Jane Does 1–30** are presently unknown law-enforcement officers, jail supervisors, correctional staff, medical and mental-health personnel, and other agents or employees of the municipal and county defendants who, **acting under color of state law, directly participated in, authorized, implemented, ratified,** or **failed to intervene to prevent** the constitutional and statutory violations alleged herein.

These Doe Defendants include, but are not limited to, individuals involved in **arrest, intake, housing decisions, suicide-watch placement, use of force, medical and mental-health assessment and treatment, disability accommodations, transport, supervision, and enforcement of void judicial orders**, as well as supervisors who **knew of or were deliberately indifferent to** unconstitutional conduct and failed to take corrective action.

At all relevant times, each Doe Defendant **had a realistic opportunity and legal obligation to intervene** to prevent or stop the violations but **failed or refused to do so,**

thereby **causing or contributing to Plaintiff's injuries**. Plaintiff will seek leave to amend this Complaint to substitute the true names and capacities of these Defendants upon discovery of their identities.

## III. STATEMENT OF FACTS

### A. Void Injunctions and Lack of Jurisdiction

14. In **February 2024**, domestic-violence injunction proceedings were conducted in Palm Beach County.
15. Petitioners expressly stated on the record that they were **not in imminent danger**, a statutory prerequisite under Florida law.
16. Despite this, injunctions were entered **without evidentiary basis**, outside statutory authority, and in violation of due process.
17. These injunctions later served as the sole predicate for Plaintiff's arrests and incarceration.

### B. First Arrest and Jail Abuse — March 1, 2024

18. On **March 1, 2024**, Plaintiff was arrested under color of law for alleged "violation of injunction," despite the absence of probable cause.
19. Plaintiff was forcibly removed from her own home, which she legally owned.
20. Plaintiff was incarcerated at the Palm Beach County Jail under conditions that were degrading, inhumane, and punitive.

### C. Punitive Suicide Watch (Unconstitutional Punishment)

21. Plaintiff was forcibly placed on **"suicide watch"** without any clinical assessment, suicidal ideation, or medical justification.
22. Plaintiff was ordered to **strip completely naked**, denied clothing and bedding, exposed to extreme cold, and confined in a **biohazard cell contaminated with feces and urine**.
23. Jail officials imposed this placement **despite knowledge of Plaintiff's documented disabilities**, including C-PTSD and traumatic brain injury.
24. This suicide-watch placement was **punitive and retaliatory**, not therapeutic, and constituted unconstitutional punishment.

### D. Witnessed Homicide Inside the Jail

25. While incarcerated, Plaintiff personally witnessed **two correctional officers violently assault a visibly pregnant detainee**, who appeared to be approximately eight months pregnant. Plaintiff was directly exposed to threatened death and serious bodily injury occurring in her presence, satisfying DSM-5-TR Criterion A for trauma exposure.

26. Plaintiff observed the detainee lose consciousness and fail to recover.

27. Plaintiff witnessed correctional staff remove the woman's body from the housing unit and place it into a **large styrofoam container**.

28. No emergency medical response was observed. Plaintiff's trauma symptoms have persisted for more than 12 months following the events described, consistent with chronic PTSD under ICD-10 code F43.12.

29. Plaintiff makes **no allegation beyond what she personally witnessed**, but the event caused profound and lasting psychological injury.

### E. Retaliatory Baker Act — March 2–6, 2024

30. Immediately following release from jail, Plaintiff was **involuntarily Baker-Acted**.

31. This detention lacked lawful statutory basis, exceeded statutory limits, and was used to **discredit and silence** Plaintiff. The statutory prerequisites for involuntary examination under the Florida Mental Health Act (Fla. Stat. § 394.463) were not satisfied. Plaintiff did not present a danger to herself or others, no qualified mental-health professional made a lawful clinical determination supporting involuntary examination, and no statutory prerequisites under Fla. Stat. § 394.463 were satisfied. The Baker Act detention was therefore unlawful and constituted an additional deprivation of liberty without due process.

32. False psychiatric labels were applied despite extensive medical records contradicting them.

### F. Appellate Reversal

33. On **February 12, 2025**, the **Florida Fourth District Court of Appeal** vacated the injunctions in their entirety, holding that the evidence failed to demonstrate imminent danger.

34. The injunctions were ruled **void ab initio**, meaning they never legally existed.

35. Although the appellate ruling issued in 2025, Plaintiff's constitutional injuries occurred earlier—**on March 1, 2024**—when Defendants arrested, jailed, and punished her under void judicial process. The underlying injunctions and enforcement actions were subsequently vacated by the Florida Fourth District Court of Appeal and declared void ab initio.

### G. Second Arrest — August 1, 2025

36. In **August 2025**, Plaintiff filed a documented medical request to reschedule a hearing due to injury and disability.

37. The court ignored this filing and issued a **bench warrant in violation of the ADA**.

38. Plaintiff was arrested on **August 1, 2025** and jailed for four days without lawful basis.

## IV. FAILURE TO INTERVENE

39. Defendants who were present during Plaintiff's unconstitutional arrest, suicide-watch placement, confinement, and medical abuse had a realistic opportunity to intervene and prevent the violations but **failed to do so**.

## V. CAUSES OF ACTION

**COUNT I — Unlawful Seizure / False Arrest**

**(Fourth and Fourteenth Amendments — 42 U.S.C. § 1983)**

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.
2. The **Fourth Amendment**, as applied to the states through the **Fourteenth Amendment**, guarantees the right of persons to be free from **unreasonable searches and seizures**, including arrest and detention **without probable cause**.
3. At all relevant times, Defendants acted **under color of state law** and **seized Plaintiff** by arresting and detaining her **without probable cause**, relying on **facially invalid, jurisdictionally defective, and constitutionally void judicial process**, including injunctions and enforcement orders later determined to be **void ab initio**.
4. It is well established by the **United States Supreme Court** that a warrantless arrest, or an arrest predicated on invalid legal process, violates the Fourth Amendment where probable cause is lacking. See, e.g., *Beck v. Ohio*, 379 U.S. 89 (1964); *Gerstein v. Pugh*, 420 U.S. 103 (1975).
5. The Supreme Court has further held that an arrest pursuant to legal process that is **constitutionally deficient** gives rise to a claim for **false arrest and unlawful seizure** under § 1983. See *Manuel v. City of Joliet*, 580 U.S. 357 (2017).
6. Defendants **knew or should have known** that the statutory prerequisites for enforcement of the alleged injunctions and temporary restraining orders were not satisfied, that Plaintiff had not been afforded constitutionally adequate notice or opportunity to be heard, and that the resulting orders could not lawfully support arrest or detention.
7. Despite this knowledge, Defendants **initiated, authorized, executed, and maintained Plaintiff's arrest and detention**, including the issuance and execution of a **bench warrant**, without first resolving Plaintiff's pending medical emergency notification and request for accommodation, and without a lawful finding of probable cause.
8. Under clearly established federal law, **continued detention without probable cause** constitutes an ongoing Fourth Amendment violation. See *Manuel v. City of Joliet*, 580 U.S. at 367; *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).
9. Similarly, in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Supreme Court reaffirmed that detention without a prompt and lawful probable-cause determination

violates the Fourth Amendment and that **unreasonable delay or reliance on defective process** renders continued confinement unconstitutional.

10. Defendants' actions were **objectively unreasonable** under clearly established law at the time of the arrest and detention, and no reasonable officer or official could have believed that arresting or continuing to detain Plaintiff under void judicial process was lawful.

11. As a direct and proximate result of Defendants' unlawful seizure and false arrest, Plaintiff suffered **loss of liberty**, physical and psychological injury, exposure to unconstitutional conditions of confinement, reputational harm, and other damages.

12. Defendants' conduct violated Plaintiff's rights under the **Fourth Amendment**, as incorporated against the states by the **Fourteenth Amendment**, entitling Plaintiff to relief under **42 U.S.C. § 1983**.

## COUNT II — Malicious Prosecution

(42 U.S.C. § 1983)

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. A claim for malicious prosecution under **42 U.S.C. § 1983** arises when a defendant, acting under color of state law, **institutes or continues a criminal prosecution without probable cause**, with **malice or reckless disregard for constitutional rights**, resulting in a **seizure of the plaintiff**, and the proceedings **terminate in the plaintiff's favor**.

3. The **Fourth Amendment**, as incorporated against the states by the **Fourteenth Amendment**, protects individuals from **unreasonable seizures pursuant to legal process**, including arrests, detentions, and restrictions on liberty arising from criminal prosecutions initiated or maintained without probable cause.

4. Defendants **initiated, authorized, and continued criminal proceedings** against Plaintiff **without probable cause**, relying on **facially invalid, jurisdictionally defective, and constitutionally void judicial process**, including injunctions, temporary restraining orders, and enforcement actions that were later declared **void ab initio**.

5. Defendants **knew or should have known** that the statutory prerequisites for enforcement were not satisfied, that Plaintiff had not been afforded constitutionally adequate notice or opportunity to be heard, and that the alleged violations could not lawfully support prosecution or continued restraint of liberty.

6. Despite this knowledge, Defendants **caused the legal process to issue and remain in effect**, including arrests, detention, and the issuance and execution of a **bench warrant**, thereby subjecting Plaintiff to **ongoing seizure and restriction of liberty** without lawful justification.

7. The United States Supreme Court has confirmed that malicious prosecution claims under § 1983 are properly grounded in the **Fourth Amendment** where legal process results in

continued detention without probable cause. See *Manuel v. City of Joliet*, 580 U.S. 357 (2017).

8. Plaintiff's criminal proceedings **terminated in her favor**, including through appellate and judicial determinations that the underlying injunctions and enforcement actions were **constitutionally and statutorily invalid**, thereby satisfying the favorable-termination element of a malicious prosecution claim.

9. Defendants acted with **malice, improper purpose, or reckless disregard** for Plaintiff's constitutional rights, as evidenced by their failure to dismiss or correct the prosecution despite clear jurisdictional defects, exculpatory information, and known procedural violations. Defendants' actions were objectively unreasonable under clearly established law, and no reasonable official could have believed that initiating or continuing prosecution under void judicial process was lawful.

10. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered **loss of liberty**, unlawful detention, reputational harm, emotional distress, exposure to unconstitutional conditions of confinement, and other compensable injuries.

11. Defendants' conduct violated Plaintiff's rights under the **Fourth and Fourteenth Amendments**, entitling Plaintiff to relief under **42 U.S.C. § 1983**.

## COUNT III — Due Process Violations

(Substantive & Procedural)

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. The **Fourteenth Amendment** guarantees that no State shall deprive any person of **life, liberty, or property without due process of law**, encompassing both **procedural due process** (fair notice and an opportunity to be heard before deprivation) and **substantive due process** (protection against arbitrary, conscience-shocking government action).

### A. Procedural Due Process

3. Plaintiff possessed protected **liberty and property interests**, including the right to bodily liberty, freedom from unlawful detention, the right to travel, access to and possession of her **lawfully owned property**, and the right to be free from coercive enforcement absent lawful process.

4. Defendants deprived Plaintiff of these interests **without constitutionally adequate procedures**, including by:

   ○ enforcing **facially invalid and jurisdictionally defective judicial orders**;
   ○ entering **additional, material restrictions outside Plaintiff's presence and without notice**, after Plaintiff was told she could leave the courtroom;

- o issuing and executing **bench warrants** without ruling on timely **medical-emergency and accommodation requests**;
- o relying on **probable-cause determinations** made without consideration of exculpatory indicators and statutory prerequisites; and
- o imposing **coercive restraints** (arrest, detention, property-exclusion zones) without a meaningful opportunity to be heard.

5. These failures **violated core procedural safeguards**, including notice reasonably calculated to apprise Plaintiff of the action, a meaningful opportunity to be heard at a meaningful time, and decision-making by a neutral authority based on lawful standards.

6. Defendants' procedural deficiencies were **not harmless**; they directly caused Plaintiff's arrests, detention, loss of liberty, exclusion from property, and cascading harms.

## B. Substantive Due Process

7. Independently, Defendants' actions **shocked the conscience** and were **arbitrary and oppressive**, including:

- o enforcing **void ab initio** process;
- o imposing **post-hearing restrictions** without notice or hearing;
- o initiating or continuing coercive enforcement **despite known jurisdictional defects**;
- o disregarding **medical emergencies and disability-related accommodation requests**; and
- o maintaining restraints on liberty and property **without any legitimate governmental justification**.

8. Defendants acted with **deliberate indifference** to Plaintiff's fundamental rights, engaging in conduct that lacked a rational relationship to any legitimate state interest and that foreseeably resulted in severe deprivation of liberty and property.

9. No reasonable official could have believed that imposing or enforcing restrictions on liberty and property **without notice, hearing, or lawful predicate** was constitutionally permissible.

## C. Causation and Damages

10. As a **direct and proximate result** of Defendants' procedural and substantive due-process violations, Plaintiff suffered unlawful arrest and detention, exclusion from property she owned, emotional and psychological injury, reputational harm, exposure to unconstitutional confinement conditions, and other compensable damages.

11. Defendants' conduct violated Plaintiff's rights under the **Fourteenth Amendment**, entitling Plaintiff to **declaratory and injunctive relief, compensatory and nominal damages, and all other relief available under 42 U.S.C. § 1983**.

**COUNT IV — Deliberate Indifference to Serious Medical Needs**

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.
2. At all relevant times, Plaintiff was a **pretrial detainee**, entitled under the **Fourteenth Amendment** to constitutionally adequate medical and mental-health care and to be free from deliberate indifference to serious medical needs.
3. A **serious medical need** exists where a condition has been diagnosed by a medical professional, is so obvious that a lay person would recognize the need for medical attention, or where delay or denial of care poses a substantial risk of serious harm.
4. Plaintiff suffered from **serious medical and mental-health needs**, including but not limited to documented trauma-related conditions, acute psychological distress, physical injury, and conditions requiring timely evaluation, treatment, and accommodation.
5. Defendants, including jail officials, medical and mental-health personnel, supervisors, and policymakers, **knew of and disregarded** Plaintiff's serious medical needs, or acted in an **objectively unreasonable** manner in failing to address those needs, including by:

   o failing to conduct adequate medical and mental-health assessments;
   o misusing or over-relying on **suicide-watch protocols** without clinical justification;
   o denying or delaying necessary treatment and monitoring;
   o placing Plaintiff in **degrading and medically unsafe conditions** that exacerbated her conditions;
   o ignoring or failing to respond appropriately to **medical emergencies and injury-related notifications**; and
   o failing to provide **reasonable accommodations** for known disabilities.

6. Defendants' actions and omissions were **not the result of mere negligence** or medical judgment, but reflected **deliberate indifference**, reckless disregard, or objectively unreasonable conduct in light of the known risks to Plaintiff's health and safety.
7. Defendants further **failed to intervene, supervise, or correct** unconstitutional medical practices despite having authority and opportunity to do so, allowing systemic deficiencies to persist.
8. As a direct and proximate result of Defendants' deliberate indifference, Plaintiff suffered **unnecessary pain and suffering**, worsening of medical and psychological conditions, prolonged detention and confinement under harmful conditions, emotional distress, and other serious injuries.

9. The constitutional violations alleged herein were **clearly established** at the time of Defendants' conduct. No reasonable official or medical provider could have believed that denying, delaying, or mismanaging medical and mental-health care for a pretrial detainee with known serious needs was lawful.

10. Defendants' conduct violated Plaintiff's rights under the **Fourteenth Amendment**, entitling Plaintiff to relief under **42 U.S.C. § 1983**, including declaratory and injunctive relief, compensatory and nominal damages, and all other relief deemed just and proper.

## COUNT V — Conditions of Confinement / Cruel and Unusual Punishment

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

At all relevant times, Plaintiff was a **pretrial detainee**. As such, her conditions of confinement were governed by the **Fourteenth Amendment's Due Process Clause**, which prohibits **punitive, degrading, or objectively unreasonable conditions** that are not reasonably related to a legitimate governmental purpose.

The Constitution forbids conditions of confinement that **amount to punishment**, that **pose an unreasonable risk to health or safety**, or that **deprive detainees of basic human needs**, including adequate shelter, sanitation, safety, medical care, and humane treatment.

Defendants subjected Plaintiff to **unconstitutional conditions of confinement**, including but not limited to:

- placement in **unsanitary and biohazardous environments**;
- exposure to **extreme cold** and deprivation of adequate clothing, bedding, or protection;
- **forced nudity** and humiliating treatment unrelated to any legitimate security or medical necessity;
- confinement under **suicide-watch or isolation conditions** imposed without clinical justification;
- exposure to **violence, threats, or unsafe conditions**, including failure to protect Plaintiff from known risks; and
- denial of reasonable accommodations for known **medical and psychological conditions**.

These conditions were **not reasonably related to a legitimate governmental objective**, were excessive in relation to any such objective, and **served no purpose other than punishment, coercion, or convenience**.

Defendants **knew of or were deliberately indifferent to** the substantial risk of serious harm posed by these conditions, or, at a minimum, acted in an **objectively unreasonable** manner given the obviousness of the risks to Plaintiff's health, safety, dignity, and mental well-being.

Defendants further **failed to intervene, supervise, or correct** unconstitutional conditions despite having the authority and opportunity to do so, thereby allowing harmful practices to persist.

The **cumulative effect** of the conditions imposed on Plaintiff—considered together rather than in isolation—constituted **punishment without adjudication**, violated contemporary standards of decency, and shocked the conscience.

As a direct and proximate result of Defendants' unconstitutional conditions of confinement, Plaintiff suffered **physical pain, psychological trauma, exacerbation of existing medical conditions, emotional distress, loss of dignity, and lasting harm**, as well as exposure to an unreasonable risk of future injury.

At the time of Defendants' conduct, the law clearly established that **pretrial detainees may not be subjected to punitive or objectively unreasonable conditions of confinement**. No reasonable official could have believed that the conditions imposed on Plaintiff were constitutionally permissible.

Defendants' actions and omissions violated Plaintiff's rights under the **Fourteenth Amendment**, entitling Plaintiff to relief under **42 U.S.C. § 1983**, including declaratory and injunctive relief, compensatory and nominal damages, and all other relief deemed just and proper.

**COUNT VI — ADA Title II (Failure to Accommodate & Disability Discrimination)**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

Plaintiff is a **qualified individual with a disability** within the meaning of the ADA, in that she has physical and mental impairments that substantially limit one or more major life activities, and/or has a record of such impairments.

Defendants are **public entities** and/or officials acting on behalf of public entities within the meaning of **42 U.S.C. § 12131(1)**, and are therefore subject to **Title II of the ADA**.

Title II of the ADA prohibits public entities from **excluding a qualified individual with a disability from participation in or denying the benefits of services, programs, or activities**, or otherwise **discriminating against such individual by reason of disability**. It further requires public entities to make **reasonable modifications** to policies, practices, and procedures when necessary to avoid discrimination, unless doing so would fundamentally alter the nature of the service or program.

20

Plaintiff was **denied meaningful access** to public services, programs, and activities, including but not limited to **court proceedings, jail services, medical and mental-health care, custody determinations, and judicial processes**, by reason of her disabilities.

Defendants **failed to provide reasonable accommodations and modifications**, despite actual or constructive knowledge of Plaintiff's disabilities, including by:

- failing to consider or grant **virtual hearings, continuances, or rescheduling** in response to documented medical emergencies or disability-related limitations;
- disregarding requests and notices related to **medical injury and hospital treatment**;
- misusing **suicide-watch and isolation protocols** in a manner that exacerbated Plaintiff's conditions rather than accommodating them;
- denying appropriate **communication, procedural, and access accommodations** necessary for Plaintiff to participate meaningfully in judicial and custodial processes; and
- enforcing **coercive measures**, including arrest, detention, and bench warrants, without accommodating Plaintiff's disabilities or engaging in any interactive process.

Plaintiff's trauma-related injuries are consistent with recognized trauma- and stressor-related disorders under DSM-5-TR and ICD-10, including Post-Traumatic Stress Disorder (F43.10, F43.12), Acute Stress Disorder (F43.0), and Other Specified Trauma- and Stressor-Related Disorder (F43.89). These injuries arose from direct exposure to life-threatening custodial conditions, unlawful confinement, and witnessed violence.

Defendants' conduct constituted **disability discrimination**, including discrimination by **failure to accommodate, use of criteria or methods of administration that have the effect of discrimination**, and **denial of benefits and services by reason of disability**, in violation of **42 U.S.C. § 12132**.

Defendants' failures were **not isolated or inadvertent**, but reflected **systemic practices and policies** that failed to account for disability-related needs, and were carried out with **deliberate indifference** to Plaintiff's federally protected rights.

As a direct and proximate result of Defendants' ADA violations, Plaintiff suffered **unlawful arrest and detention**, exclusion from court access, loss of liberty, exacerbation of medical and psychological conditions, emotional distress, humiliation, and other compensable injuries.

Defendants' violations of Title II of the ADA entitle Plaintiff to **declaratory and injunctive relief, compensatory damages**, and **reasonable attorneys' fees and costs** pursuant to **42 U.S.C. § 12205**, as well as all other relief the Court deems just and proper.

## COUNT VII — Rehabilitation Act § 504

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Plaintiff is an **individual with a disability** within the meaning of **Section 504 of the Rehabilitation Act**, 29 U.S.C. § 794(a), in that she has physical and mental impairments that substantially limit one or more major life activities, and/or has a record of such impairments.

3. Defendants are **programs or activities receiving federal financial assistance**, including but not limited to **state and local governmental entities, law-enforcement agencies, detention facilities, courts, and contractors** that receive federal funds directly or indirectly, and are therefore subject to **Section 504**.

4. Section 504 prohibits any federally funded program or activity from **excluding a qualified individual with a disability from participation in, denying the benefits of, or subjecting such individual to discrimination** solely by reason of disability.

5. **Federal Financial Assistance** - At all relevant times, Defendants operated programs and activities that **received federal financial assistance**, directly or indirectly, including through federal grants, funding allocations, reimbursements, and programmatic support. Defendants are therefore subject to the requirements and prohibitions of **Section 504 of the Rehabilitation Act**, 29 U.S.C. § 794.

6. Plaintiff was **otherwise qualified** to participate in and receive the benefits of Defendants' services, programs, and activities—including **court access, custody determinations, detention services, medical and mental-health care, and judicial processes**—with or without reasonable accommodation.

7. Defendants acted with **deliberate indifference** to Plaintiff's federally protected rights by knowingly failing to provide reasonable accommodations, disregarding medical emergencies and disability-related limitations, and enforcing coercive measures without engaging in any accommodation or interactive process required by federal law.

8. Plaintiff's exclusion, denial of benefits, and resulting injuries occurred **solely by reason of her disability**, satisfying the causation requirement of Section 504.

9. Defendants **excluded Plaintiff from participation in, denied her the benefits of**, and **subjected her to discrimination** in federally funded programs and activities **by reason of her disability**, including by:

    o failing to provide **reasonable accommodations or modifications** despite actual or constructive knowledge of Plaintiff's disabilities;

    o disregarding **medical emergencies, injury notifications, and disability-related limitations** when scheduling hearings or issuing enforcement actions;

    o denying **meaningful access** to court proceedings and custodial processes through refusal to consider **virtual hearings, continuances, or rescheduling**;

- misapplying **suicide-watch, isolation, or restraint protocols** in a manner that exacerbated Plaintiff's disabilities rather than accommodating them; and
- imposing **coercive measures**, including arrest, detention, and bench warrants, without engaging in any interactive or accommodation process required by federal law.

10. Defendants' actions and omissions were **not the result of mere negligence**, but reflected **deliberate indifference** to Plaintiff's federally protected rights under Section 504, as Defendants knew of a substantial likelihood of harm to Plaintiff's access and safety and failed to act.

11. As a **direct and proximate result** of Defendants' violations of the Rehabilitation Act, Plaintiff suffered **loss of liberty**, exclusion from court access and services, exacerbation of medical and psychological conditions, emotional distress, humiliation, and other compensable injuries.

12. Defendants' conduct violated **29 U.S.C. § 794**, entitling Plaintiff to **declaratory and injunctive relief, compensatory damages**, and **reasonable attorneys' fees and costs** pursuant to **29 U.S.C. § 794a**, as well as all other relief the Court deems just and proper.

**COUNT VIII — Monell Liability (Policy, Custom, Failure to Train, Supervise, and Discipline — 42 U.S.C. § 1983)**

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Defendant municipal entities, including the City, County, Sheriff's Office, and other public-entity Defendants (collectively, the "Municipal Defendants"), are **persons** subject to suit under **42 U.S.C. § 1983** and are liable for constitutional violations caused by their **official policies, customs, practices, and decisions of final policymakers**.

3. At all relevant times, the Municipal Defendants maintained **policies, customs, or practices** that were the **moving force** behind the constitutional and statutory violations alleged herein, including unlawful seizure and detention, malicious prosecution, due-process violations, deliberate indifference to medical needs, unconstitutional conditions of confinement, and disability discrimination.

## A. Official Policies and Decisions of Final Policymakers

4. The violations suffered by Plaintiff were caused by **official policies or decisions** made or ratified by individuals with **final policymaking authority**, including policies governing:

   ○ enforcement and continuation of injunctions and restraining orders without adequate verification of statutory prerequisites;
   ○ arrest, detention, and bench-warrant issuance in the absence of probable cause or without ruling on pending medical-emergency or accommodation requests;
   ○ jail intake, suicide-watch placement, isolation, and housing decisions;
   ○ coordination between law enforcement, prosecutors, courts, and jail medical providers; and
   ○ responses to disability-related requests and medical emergencies.

5. These policies were **facially unconstitutional**, or were applied in a manner that was **objectively unreasonable** and **deliberately indifferent** to clearly established constitutional rights.

## B. Widespread Customs and Practices

6. Alternatively and independently, the Municipal Defendants maintained **longstanding, widespread customs and practices**—so permanent and well settled as to constitute the force of law—including:

   ○ initiating and continuing prosecutions under **void or defective judicial process**;
   ○ enforcing post-hearing restrictions entered **outside a party's presence and without notice**;
   ○ issuing bench warrants without timely consideration of medical emergencies or disability accommodations;
   ○ misusing suicide-watch or isolation protocols as a default response rather than a clinically justified measure; and
   ○ tolerating unsafe, degrading, or medically harmful conditions of confinement.

7. These customs and practices were **known to policymakers**, who **failed to correct them** despite obvious risks of constitutional injury.

## C. Failure to Train, Supervise, and Discipline

8. The Municipal Defendants **failed to adequately train, supervise, and discipline** law-enforcement officers, jail staff, supervisors, and contracted medical providers

regarding:

- probable-cause requirements and limits on arrest and detention;
- due-process obligations, including notice and opportunity to be heard;
- handling of medical emergencies and disability-related accommodation requests;
- appropriate use of suicide-watch and isolation; and
- constitutional standards governing pretrial detainee care and conditions of confinement.

9. This failure reflected **deliberate indifference** to the rights of persons with whom municipal employees and agents came into contact, as the need for such training and supervision was **obvious**, and the likely consequences of inaction included precisely the violations suffered by Plaintiff.

## D. Ratification and Institutional Incentives

10. The Municipal Defendants **ratified** the unconstitutional conduct by failing to investigate, discipline, or remediate known violations and by continuing to enforce or rely upon defective processes.

11. Upon information and belief, **institutional incentives**—including performance metrics, budgetary considerations, staffing practices, and avoidance of accountability costs—**encouraged or tolerated** the continuation of unconstitutional practices, further demonstrating deliberate indifference.

## E. Causation and Damages

12. The Municipal Defendants' policies, customs, failures to train and supervise, and ratification were the **direct and proximate cause** of Plaintiff's injuries, including unlawful arrest and detention, exclusion from property, denial of medical and disability accommodations, exposure to unconstitutional confinement conditions, emotional distress, and other damages.

13. As a result, the Municipal Defendants are liable to Plaintiff under **42 U.S.C. § 1983** for **compensatory and nominal damages**, as well as **declaratory and prospective injunctive relief**, and all other relief the Court deems just and proper.

**COUNT IX — Declaratory & Injunctive Relief**

**(Void Injunctions; Unconstitutional Enforcement — 28 U.S.C. §§ 2201–2202; 42 U.S.C. § 1983)**

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.
2. An **actual, present, and justiciable controversy** exists between Plaintiff and Defendants concerning the **constitutionality and enforceability** of the injunctions, restraining orders, warrants, and related enforcement practices challenged in this action.
3. Plaintiff seeks **declaratory relief** pursuant to **28 U.S.C. § 2201** to clarify the parties' rights and obligations under the United States Constitution and federal law, and **prospective injunctive relief** pursuant to **28 U.S.C. § 2202** and **42 U.S.C. § 1983** to prevent ongoing and future violations.

**A. Declaratory Relief**

4. Plaintiff seeks declarations that the injunctions, restraining orders, bench warrants, and enforcement actions challenged herein were **void ab initio** and **constitutionally invalid** because they were issued and enforced:

   - **without satisfaction of statutory prerequisites**;
   - **without constitutionally adequate notice and opportunity to be heard**;
   - **outside the presence of the affected party**, including the entry of additional restrictions after Plaintiff was told she could leave the courtroom;
   - **without a lawful and individualized probable-cause determination**;
   - **without consideration of medical emergencies or disability-related accommodation requests**; and
   - in a manner that **deprived Plaintiff of liberty and property** without due process of law.

5. Plaintiff further seeks declarations that Defendants' **policies, customs, and practices** governing the issuance and enforcement of such orders—including post-hearing modifications, summary enforcement, and failure to rule on accommodation requests before issuing coercive measures—**violate the Fourth and Fourteenth Amendments,** the **ADA**, and the **Rehabilitation Act**.

## B. Prospective Injunctive Relief

6. Plaintiff seeks **narrowly tailored prospective injunctive relief** to prevent recurrence of the unconstitutional practices alleged, including orders requiring Defendants to:

   o refrain from **entering or enforcing injunctions or restraining orders** absent compliance with statutory prerequisites and constitutional due process;
   o **prohibit post-hearing additions or material modifications** to orders entered outside a party's presence and without notice;
   o **resolve and rule upon medical-emergency and disability-related accommodation requests** before issuing bench warrants, arrest orders, or other coercive enforcement measures;
   o ensure **lawful probable-cause determinations** based on valid process before arrest or detention;
   o provide **reasonable accommodations** necessary for meaningful access to court proceedings and custodial processes; and
   o implement **training, supervision, and oversight** sufficient to ensure compliance with constitutional and federal statutory requirements.

7. The requested injunctive relief is **prospective only**, is **necessary to prevent ongoing and future harm**, and is **no broader than required** to remedy the constitutional violations established by the facts alleged.

## C. Ongoing Harm and Inadequacy of Legal Remedies

8. The Plaintiff faces a **real and immediate threat of future injury** absent declaratory and injunctive relief, including the risk of renewed enforcement, arrest, detention, and exclusion from property based on the same or similar unconstitutional practices.
9. Plaintiff has **no adequate remedy at law** to prevent future violations, as damages alone cannot redress the continuing risk of unconstitutional enforcement and deprivation of liberty and property.

## D. Relief Requested

10. Plaintiff therefore seeks:

- declaratory judgments as set forth above;
- permanent injunctive relief prohibiting unconstitutional issuance and enforcement of the challenged orders and practices;
- such further equitable relief as the Court deems just and proper to ensure **prospective compliance** with the Constitution and federal law.

## VI. DAMAGES

40. Plaintiff suffered severe and continuing **physical, psychological, cognitive, and economic harm** as a direct and proximate result of Defendants' unconstitutional acts and omissions. These injuries include, but are not limited to:

41. Plaintiff experienced **acute and chronic exacerbation of Complex Post-Traumatic Stress Disorder (C-PTSD)**, marked by heightened anxiety, dissociation, panic responses, intrusive recollections, and destabilization requiring ongoing psychiatric and therapeutic care. Defendants' actions substantially aggravated Plaintiff's pre-existing trauma conditions rather than accommodating or mitigating them.

42. Plaintiff suffered **worsening traumatic brain injury–related symptoms**, including cognitive impairment, executive-function deficits, confusion, memory disruption, difficulty processing information, and impaired ability to meaningfully participate in legal proceedings. These impairments were compounded by stress, deprivation of medical stability, and forced custodial conditions inconsistent with her neurological needs.

43. Plaintiff endured **physical injury and medical deterioration**, including musculoskeletal injury, systemic inflammation, and acute medical episodes requiring emergency treatment, all of which were exacerbated by unlawful detention, lack of accommodation, and failure to respond to documented medical emergencies. Laboratory findings and clinical evaluations confirm physiological stress responses and injury consistent with trauma exposure and neglect, as reflected in Plaintiff's medical records, laboratory results, and clinical evaluations, which will be produced during discovery.

44. Plaintiff suffered **loss of liberty**, including unlawful arrest, detention, suicide watch placement, and coercive confinement without constitutionally adequate process. These deprivations imposed extreme psychological distress and caused lasting trauma beyond the period of confinement itself.

45. Plaintiff suffered **loss of housing and property access**, including exclusion from property she lawfully owned or occupied, resulting in displacement, instability, and financial harm.

46. Plaintiff sustained **reputational injury**, stigma, and damage to her standing in the community as a result of false criminalization, unlawful mental-health labeling, and public record entries stemming from unconstitutional proceedings.

47. Plaintiff incurred **significant economic losses**, including loss of income, interruption of professional activities, increased medical and therapeutic expenses, relocation costs, and long-term diminishment of earning capacity attributable to Defendants' conduct.

48. Finally, Plaintiff continues to suffer **long-term emotional and psychological trauma**, including fear of re-arrest, hypervigilance, sleep disturbance, and diminished quality of life, with ongoing need for medical, psychological, and rehabilitative care.

49. These injuries were **foreseeable**, **avoidable**, and directly caused by Defendants' actions taken under color of law, entitling Plaintiff to compensatory damages, equitable relief, and all other relief authorized by law.

50. Plaintiff seeks compensatory damages, punitive damages against individual defendants, declaratory relief, injunctive relief, costs, and all relief deemed just.

51. Damages for ongoing, future, and continuing harm resulting from Defendants' unconstitutional actions, including but not limited to continuing medical injury, psychological trauma, reputational harm, and loss of life opportunities.

52. All remedies are sought cumulatively and in the alternative, and Plaintiff does not waive any legal or equitable relief by seeking declaratory or injunctive relief.

## STATUTE OF LIMITATIONS AND TOLLING

Plaintiff's claims are timely under the applicable statute of limitations. To the extent any claim may be deemed to have accrued earlier, equitable tolling applies due to Plaintiff's involuntary detention, disability-related impairments, and Defendants' concealment of critical information concerning the void nature of the underlying injunctions.

## RESERVATION AND RIGHT TO AMEND

Plaintiff presently seeks declaratory and prospective injunctive relief against the Judicial Defendants in their official capacities. However, should discovery reveal that any Judicial Defendant engaged in non-judicial conduct, administrative misconduct, investigative actions, or acts undertaken in the clear absence of jurisdiction, Plaintiff expressly reserves the right to amend this Complaint to assert additional claims against such individuals in their personal capacities.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

a. **Compensatory damages** in an amount to be determined at trial for physical, psychological, emotional, cognitive, reputational, and economic harm;

b. **Punitive damages** against the individual Defendants in their individual capacities to punish and deter willful, malicious, and reckless misconduct;

c. **Declaratory relief** declaring that Defendants' acts, policies, practices, and omissions violated Plaintiff's rights under the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act, including a declaration that the injunctions, temporary restraining orders, arrests, detentions, and enforcement actions at issue were **void ab initio**;

d. **Injunctive and prospective relief** sufficient to prevent recurrence of the constitutional and statutory violations alleged, including appropriate policy, training, and supervisory reforms;

e. **Expungement, sealing, vacatur, and correction of all records**—criminal, civil, administrative, and law-enforcement—arising from or relating to the unconstitutional arrests, detentions, injunctions, temporary restraining orders, bench warrants, and proceedings at issue, including all public dockets and databases that continue to reflect such actions;

f. **Damages for ongoing, future, and continuing harm**, including continuing medical injury, psychological trauma, reputational harm, and loss of life opportunities;

g. **Pre-judgment and post-judgment interest** as allowed by law;

h. **Reasonable attorneys' fees, expert fees, and costs** pursuant to 42 U.S.C. § 1988, the ADA, and the Rehabilitation Act;

i. **Nominal damages** to vindicate the violation of Plaintiff's constitutional rights;

j. **Retention of jurisdiction** to enforce any judgment, declaratory relief, injunctive relief, or settlement entered in this action; and

k. **Such other and further relief** as the Court deems just and proper.

l. Plaintiff further requests leave to amend this Complaint if discovery reveals additional defendants or claims.
 m. Any additional relief the Court deems equitable and appropriate.

## VII. WAIVER OF JURY TRIAL; REQUEST FOR VIRTUAL PROCEEDINGS

**Plaintiff knowingly and expressly waives trial by jury** on all issues so triable and requests that this matter be **tried to the Court**.

Plaintiff further requests that **all hearings, conferences, and proceedings be conducted virtually or by remote means**, to the fullest extent permitted by law, in light of Plaintiff's documented medical conditions, disabilities, and the interests of accessibility, efficiency, and judicial economy.

## VERIFICATION

I, **Melanie M. Beres**, declare under penalty of perjury under the laws of the United States pursuant to **28 U.S.C. § 1746** that I am the Plaintiff in this action. I have read the foregoing Complaint and know the contents thereof.

I declare that the factual allegations contained in this Complaint are **true and correct to the best of my personal knowledge**, and that allegations stated on information and belief are believed by me to be true based upon reasonable inquiry, review of records, and information obtained from reliable sources.

I further declare that this Verification is made in good faith and for the purposes of seeking redress for violations of my rights under the Constitution and laws of the United States.

## VIII. SIGNATURE

**/s/ Melanie M. Beres**
Plaintiff, Pro Se
Executed under 28 U.S.C. § 1746

% 9418 N. Green Bay Ave., Apt 328.,
Brown Deer, WI, 53209.
melanieberes@protonmail.com
+1-414-916-8755

Melanie M. Ceres
9418 N. Green Bay Rd
Apt 328
Brown Deer WI 53209



CERTIFIED MAIL

9589 0710 5270 3437 0438 38



Retail

U.S. POSTAGE PAID
PM
MILWAUKEE, WI 53223
MAR 07, 2026

33401

**$26.50**

R2305K141682-9

U.S. Courthouse

Att: Clerk

701 Clematis Street

Room 202

West Palm Beach FL 33401.

INSPECTED

RETURN RECEIPT REQUESTED